Derek J. SMITH, Plaintiff–Appellant,

v.

DUNHAM–BUSH, INC., and the Robins Group, Inc., Defendants–Appellees.

No. 619, Docket 90–7616.

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1990.

Decided Feb. 7, 1992.

---

Markus L. Penzel, New Haven, Conn. (Garrison, Silbert & Arterton, of Counsel) for plaintiff-appellant.

Willis J. Goldsmith, Washington, D.C. (Jones, Day, Reavis & Pogue, of counsel) for defendants-appellees.

Before VAN GRAAFEILAND and WALKER, Circuit Judges, and DEARIE, District Judge.[1]

DEARIE, District Judge:

Plaintiff-appellant Derek Smith appeals from an order of the United States District Court for the District of Connecticut, Jose A. Cabranes, *Judge*, that granted defendant's motion for summary judgment and denied plaintiff's motion to remand to Connecticut state court. The district court ruled that the statutory preemption provision of the Employee Retirement Income Security Act of 1974 ("ERISA") warranted removal of the case to federal court and that substantive ERISA law required its dismissal.

We affirm.

**Background**

This case involves an attempt by an employee, appellant Derek Smith, to enforce an oral promise to pay pension-related benefits allegedly made by his employer, appellee Dunham–Bush, Inc. ("Dunham–Bush"). Smith originally filed the action in Connecticut state court asserting common law claims of breach of contract and negligent misrepresentation. The complaint did not assert any claim under ERISA. Dunham–Bush, however, removed the action to federal court on preemption grounds under ERISA sections 502 and 514, 29 U.S.C. §§ 1132, 1144 (1985), and 28 U.S.C. §§ 1441(b), 1446(b). The district court denied Smith's motion to remand and awarded summary judgment to Dunham–Bush.

Derek Smith has been employed in the United States by Dunham–Bush since 1977. A citizen of the United Kingdom, he had worked in England with Dunham–Bush (Manufacturing) Ltd. for thirty-three years, rising to the level of managing director. In 1977, Robert Elliot, then president of Dunham–Bush, asked Smith to transfer to the company's Connecticut affiliate. According to the complaint, when Smith expressed concerns about the inferiority of the United States affiliate's pension plan, Elliot assured him that Dunham–Bush would provide him with a benefits package comparable to what he would have received upon his retirement in the United Kingdom. Smith understood that he would participate in the affiliate's ERISA plan, but that Dunham–Bush would supplement or "boost up" those benefits based on his anticipated package in the United Kingdom. On the basis of that oral assurance, Smith agreed to relocate to Connecticut where he continues to be employed by Dunham–Bush.

Conceding, as he did below, that the oral promise is unenforceable under ERISA, Smith instead argues that his common law claims under Connecticut law are not preempted and that removal was improper. We disagree and affirm the judgment.

1. Hon. Raymond J. Dearie, United States District Judge for the Eastern District of New York, sitting by designation.

## Discussion

The essential question before this court is whether Dunham–Bush properly removed the action to federal court. A claim styled as a state common law cause of action is removable under ERISA if it "relates to" an employee benefit plan within the meaning of section 514(a), 29 U.S.C. § 1144(a), and falls within the scope of the statute's civil enforcement provisions, found in section 502(a), 29 U.S.C. § 1132(a); *see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

Smith first argues that the district court erred in ruling that ERISA preempts his state law claims. He asserts that his state law claims do not "relate to" the ERISA plan because he has sued Dunham–Bush only in its capacity as an employer, not as an administrator of the ERISA plan. In the alternative, Smith contends that because he neither challenges his benefits under the terms of the ERISA plan, nor seeks recovery from its assets, the action does not fall within the scope of ERISA's civil enforcement provisions. He maintains, under either theory, that the action was improperly removed, and that he should be allowed to return to Connecticut state court to pursue his common law claims.

■ Applying the Supreme Court's well-developed preemption analysis, we conclude that Smith's common law contract and tort claims are preempted by ERISA. *Metropolitan Life*, 481 U.S. at 62, 107 S.Ct. at 1545. This lawsuit "relate[s] to [an] employee benefit plan." *See* ERISA § 514(a), 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48–51, 107 S.Ct. 1549, 1553–55, 95 L.Ed.2d 39 (1987). As a suit brought by a plan participant to clarify future benefits in relation to a covered plan, it falls within the scope of section 502(a)(1)(B), which provides an exclusive federal cause of action for the resolution of such disputes. *Metropolitan Life*, 481 U.S. at 63, 107 S.Ct. at 1546; *Pilot Life*, 481 U.S. at 56, 107 S.Ct. at 1557.

## A. Preemption

■ Federal question jurisdiction generally exists only when a well-pleaded complaint raises issues of federal law on its face. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). Ordinarily, a case may not be removed on the basis of a federal defense, including the defense of preemption, even if anticipated in the complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). However, if Congress completely preempts an area of state law, any "complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546; *Franchise Tax Bd.*, 463 U.S. at 24, 103 S.Ct. at 2854. Congressional purpose is the "ultimate touchstone" in determining whether federal law preempts a particular state action. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985). To discern whether Congress intended that ERISA preempt appellant's cause of action, we examine the statute's express objectives, its structure, the plain meaning of its language, and its interpretation by the courts. *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990).

In ERISA, Congress expressly included a broadly worded preemption clause within a comprehensive statutory scheme. *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). Congress devised ERISA's "deliberately expansive" language to "establish pension plan regulation as exclusively a federal concern." *Pilot Life*, 481 U.S. at 46, 107 S.Ct. at 1552; *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). By careful design, Congress intended the statute to avert a "patchwork scheme of [state] regulation" which would necessarily introduce "considerable inefficiencies in benefit program operation." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987). Through uniform regulation, Congress sought to abate the potential for employers to reduce

benefits or to refrain altogether from adopting such plans for fear of being subject to frequent and inconsistent state law challenges by disgruntled participants. *See id.* at 10–11, 107 S.Ct. at 2216–17.

Section 514(a) of ERISA explicitly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." ERISA § 514(a), 29 8 U.S.C. § 1144(a) (1985).[2] The Supreme Court has consistently afforded a broad, although not absolute, reading to this preemption provision. *See, e.g., Ingersoll–Rand, supra,* 111 S.Ct. at 482; *FMC Corp., supra,* 111 S.Ct. at 407; *Fort Halifax, supra,* 482 U.S. at 8, 107 S.Ct. at 2215; *Pilot Life, supra,* 481 U.S. at 47–48, 107 S.Ct. at 1552–53; *Metropolitan Life, supra,* 481 U.S. at 63–65, 107 S.Ct. at 1546–47; *Shaw v. Delta Air Lines,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *Alessi, supra,* 451 U.S. at 523–24, 101 S.Ct. at 1906.

Most recently in *Ingersoll–Rand,* a unanimous Court confirmed that a state law "relates to" an employee benefit plan if it "has a connection with or reference to such plan," whatever the state law's underlying intent. 111 S.Ct. at 483; *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Ingersoll–Rand,* 111 S.Ct. at 483 (quoting *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553). Thus, a state law of general application, with only an indirect effect on a pension plan, may nevertheless be considered to "relate to" that plan for preemption purposes. *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900.

Smith argues that section 514(a) is limited by the narrower language of section 514(c)(2), which provides:

The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either which *purports to regulate,* directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

29 U.S.C. § 1144(c)(2) (emphasis added). The Supreme Court, however, foreclosed this argument in *Ingersoll–Rand,* 111 S.Ct. at 484, finding that it both misreads the section and misapprehends its purpose. Section 514(c)(2) expands, rather than restricts, the preemptive sweep of section 514(a) by defining the term "State" to include "state agencies and instrumentalities whose actions might not otherwise be considered state law." *Id.* As the *Ingersoll–Rand* Court observed:

Had Congress intended to restrict ERISA's preemptive effect to state laws purporting to regulate plan terms and conditions, it surely would not have done so by placing the restriction in an adjunct definition section while using the broad phrase "relate to" in the pre-emption section itself.

*Id.*[3]

Although the Supreme Court has consistently expanded the scope of ERISA preemption, it has identified certain limits to the statute's preemptive effect which allow for the independent operation of some narrowly prescribed state laws. *See* Gregory, *ERISA Law in the Rehnquist Court,* 42 Syracuse L.Rev. 915 (1991). For example, if a generally applicable state garnishment law makes no specific reference to ERISA and merely allows for the attachment of ERISA benefits along with other assets, its impact on the plan's administration does not alone compel preemption. *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 841, 108 S.Ct. 2182, 2191, 100 L.Ed.2d 836 (1988). In addition, the plain

---

2. The section exempts from preemption generally applicable criminal laws, 29 U.S.C. § 1144(b)(4), and laws regulating insurance, banking or securities, 29 U.S.C. § 1144(b)(2)(A). Neither exception applies here.

3. Appellant Smith cites this Court's decision in *Rebaldo v. Cuomo* as authority for the proposition that a state law claim is preempted only if

it relates to *and* "purports to regulate" an ERISA plan. *See Rebaldo,* 749 F.2d 133, 137 (2d Cir. 1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). Since the Supreme Court expressly rejected this argument in *Ingersoll–Rand,* 111 S.Ct. at 484, appellant's reliance on *Rebaldo* is misplaced.

meaning of section 514(a) preempts only those state laws relating to benefit *plans*; for example, it would not preempt a state law requiring a one-time severance payment because it would not implicate an ongoing plan. *Fort Halifax*, 482 U.S. at 23, 107 S.Ct. at 2223.

Neither of these narrowly-tailored limitations, however, applies in this case. Nor do they support Smith's position in any way. He is an ERISA plan participant. He makes explicit reference to the pension plan in his complaint. Unlike *Mackey*, the oral representation underlying this suit deals expressly and exclusively with the appellant's benefits. Moreover, unlike *Fort Halifax*, the calculation of the promised supplemental benefits would indeed implicate Dunham–Bush's ERISA plan, requiring ongoing financial coordination and control. *See Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir.1989).

Although appellant attempts to fashion his complaint as one relating only to his pension benefits, and not to any plan, the existence of Dunham–Bush's pension plan would be a critical factor in establishing the extent of liability under state common law. In reality, his suit represents an attempt to supplement the plan's express provisions and secure an additional benefit. Smith's cause of action therefore relates not merely to his benefits, but to the essence of the plan itself. *See Felton v. Unisource Corp.*, 940 F.2d 503, 509 (9th Cir.1991).

Although Smith may have been induced to relocate to the United States through Dunham–Bush's unenforceable oral assurance, that does not significantly distinguish him from other employees and plan participants seeking to supplement their pension plans with orally promised benefits. ERISA explicitly provides, in section 402(a), that all agreements relating to pension benefits must be in writing. ERISA § 402(a), 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument"). The writing requirement protects employees from having their benefits eroded by oral modifications to the plan.

Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan. The statutory language of § 1102(a)(1) is clear and concise and must be enforced as written. To hold otherwise would not only thwart congressional purpose and intent, but would afford less protection to employees and their beneficiaries.

*Cefalu*, 871 F.2d at 1296 (holding that ERISA precludes oral modification to written plan); *compare Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989) (ERISA preempts state law claims resting on allegations of plan's oral amendment).

Accordingly, we have no difficulty in concluding that appellant's state law causes of action "relate to" a plan within the meaning of section 514(a) and are therefore preempted by ERISA.

### B. Removal Jurisdiction

The civil enforcement provisions of ERISA operate to recharacterize state law claims for benefits as actions arising under federal law. *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir.1989). Although appellant's suit is preempted, it may be removed only if it comes within the scope of ERISA's civil enforcement provisions. *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1547.

ERISA section 502(a)(1)(B) provides that a plan participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Relief may take the form of a declaratory judgment of entitlement to benefits. *Pilot Life*, 481 U.S. at 53, 107 S.Ct. at 1556. Appellant endeavors, through a series of arguments, to distinguish his claims from those falling within the wide ambit of ERISA's civil enforcement provisions. We find his assertions unpersuasive.

Mr. Smith argues strenuously that this action cannot be removed to federal court because nothing on the face of the complaint indicates that his common law action was both preempted by section 514(A) and displaced by the civil enforcement provisions of section 502(a). The Supreme Court expressly rejected this argument in *Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1547.

Appellant also attempts to distinguish his action as one involving only his benefits, not an ERISA plan. On the contrary, the existence of the Dunham–Bush pension plan is inseparably connected to any determination of liability under state law. As the *Ingersoll–Rand* Court noted, in substantially similar circumstances, "The [Connecticut] cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan.... Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan." 111 S.Ct. at 483. Accordingly, Smith's suit relates not merely to pension benefits, but to the pension plan itself. Moreover, Mr. Smith's suit essentially seeks "to clarify his rights to future benefits" based on the oral assurances from Dunham–Bush to supplement those benefits. His action, therefore, falls squarely within the meaning of section 502(a).

Similarly unavailing is appellant's argument that ERISA preemption will leave him with no adequate remedy for the alleged breach of contract and misrepresentation by Dunham–Bush. Other circuits addressing this issue have held that the preclusion of remedy does not bar the operation of ERISA preemption. *See Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991); *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 757 (5th Cir.1990); *Straub v. Western Union Tel. Co.*, 851 F.2d 1262, 1265–66 (10th

Cir.1988); *Northwest Adm'rs, Inc. v. B.V. & B.R., Inc.*, 813 F.2d 223, 226–67 (9th Cir.1987); *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986). The effect of ERISA preemption is wholly to eliminate state law claims by benefit plan participants and beneficiaries, leaving them only the causes of action specifically provided in the statute's civil enforcement provisions. *See, e.g., Hansen v. Continental Ins. Co.*, 940 F.2d 971, 979 (5th Cir.1991); *Amos v. Blue Cross–Blue Shield*, 868 F.2d 430 (11th Cir.1989), *cert. denied*, 493 U.S. 855, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989).

Section 502(a)'s six carefully integrated civil enforcement provisions demonstrate that "Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Ingersoll–Rand*, 111 S.Ct. at 485; *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556; *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). The policy choices reflected in Congress's inclusion of certain remedies and exclusion of others would be "completely undermined" if ERISA plan participants and beneficiaries could freely obtain remedies under state law that Congress has rejected. *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556.[4]

A common sense construction of the statutory language and its stated objectives leads us to the inescapable conclusion that a plan participant's claim for add-on benefits necessarily falls within the intended scope of the civil enforcement provisions of section 502(a)(1)(B), 29 U.S.C. § 11232(a)(1)(B). *See Anderson v. John Morrell & Co.*, 830 F.2d 872, 875 (8th Cir. 1987). Were we to allow appellant's common law actions, we would thereby subject "plans and plan sponsors to burdens not unlike those that Congress sought to fore-

---

**4.** Congress has consistently demonstrated its willingness and capacity to amend ERISA responsibly to provide statutory exceptions for the operation of state law. Currently pending before the Senate is a bill introduced by Senator Howard Metzenbaum. *See* 137 Cong.Rec. S4,246–47 (daily ed. April 9, 1991) (statement of

Sen. Metzenbaum). If enacted, this effort would provide for a comprehensive study of ERISA preemption, and, most immediately, amend ERISA to overrule *Pilot Life. See id.* at S4,246. Any further examination or redefinition of the ERISA preemption doctrine is, therefore, properly left to Congress.

close through § 514(a)." *Ingersoll–Rand,* 111 S.Ct. at 484.[5]

### Conclusion

Ultimately, Smith is no different from any other plan participant suing for added benefits under a claim that the employer promised additional monies to the participant. Such a claimant could argue, as Smith does, that he or she was content with the plan benefits, but was merely suing for additional benefits from the employer, rather than the plan. In this case, Smith presents that claim attractively, if not sympathetically. Nevertheless, an understanding of ERISA and its underlying congressional purpose emphatically shows that despite its surface appeal, Smith's position is without merit. To accommodate such a claim would countermand Congress's express directives. It would irreparably undermine ERISA and would seriously discourage employers from adopting such plans. Eventually, it would reduce the level of financial security for working people.

Smith's causes of action are both preempted by ERISA and within the scope of the statute's civil enforcement provisions. Dunham–Bush, therefore, properly removed the action to federal court under the complete preemption doctrine. The appellant has conceded for purposes of this appeal that he has no claim under ERISA. Accordingly, the judgment of the district court is affirmed.

---

**5.** We note the particular danger to ERISA's policy of uniform regulation should a plan be subject to inconsistent or conflicting substantive laws of the individual states.